Nayereh S. RASSOULPOUR, et al., Appellants,

v.

WASHINGTON METROPOLITAN AREA TRANSIT AUTHORITY, a body corporate, et al., Appellees.

No. 86–5478.

United States Court of Appeals, District of Columbia Circuit.

Argued April 24, 1987.

Decided Aug. 14, 1987.

Gregory A. Cotter, with whom Robert J. Stanford, Washington, D.C., was on brief, for appellants.

Gerard J. Stief, with whom Sara E. Lister, Carol A. Sigmond, and Mark R. Pohl, Washington, D.C., were on brief, for appellee WMATA.

Edward J. Longosz, II, with whom Gary W. Brown and James F. Bromley, Washington, D.C., were on brief, for appellee Westinghouse Electric Corp.

Before BUCKLEY and WILLIAMS, Circuit Judges, and STANLEY A. WEIGEL,[*] Senior District Judge for the Northern District of California.

Opinion for the court filed by Senior District Judge WEIGEL.

WEIGEL, Senior District Judge:

Appellants Nayereh Rassoulpour and Ali Rassoulpour brought this action for personal injury and loss of consortium against appellees Washington Metropolitan Area Transit Authority ("WMATA") and Westinghouse Electric Corporation ("Westinghouse").

## I. FACTS

Mrs. Rassoulpour was injured when she fell on an escalator at a Metro station in Washington, D.C. Mrs. Rassoulpour claims that she was walking down a stationary escalator when the stairs jerked, causing her to fall down the escalator. The Metro is run by WMATA. The escalator was built and serviced by Westinghouse.

Appellants relied on Mrs. Rassoulpour's testimony and evidence of how the Metro escalators are started and stopped. Appellees introduced into evidence an accident report written by a Metro attendant, John Freeny. The report stated, "It was reported to me that she was running down the escalator, fell and twisted left ankle." At trial, Freeny testified that the source of information for his report was a Metro transit officer, William C. Ebling. Freeny did not testify as to the source of Ebling's information (that is, whether Ebling was an eyewitness). Ebling did not testify.

The jury reached a verdict for appellees.

The Rassoulpours appeal the court's refusal to give a *res ipsa loquitur* instruction. The court found that that instruction would have been improper because appellants presented some evidence of how the accident might have occurred. Appellants also contest the court's decision to admit the accident report into evidence on the ground that the report's statement that Mrs. Rassoulpour was running is inadmissible hearsay.

[*] Sitting by designation pursuant to 28 U.S.C. § 294(d).

After appellants filed their opening brief on appeal, WMATA disclosed the existence of an accident report written by Ebling. The report was within appellants' discovery request. WMATA claims its failure to turn over the report was inadvertent. The report contains Mrs. Rassoulpour's version of the accident [1] as well as the name of a witness, officer Debra A. Lee. The report does not state whether Ebling saw the accident nor whether Lee was the source of Ebling's statement to Freeny.

## II. ANALYSIS

### A. Res Ipsa Loquitur

To establish a prima facie case under a *res ipsa loquitur* theory, plaintiffs must present evidence to establish three elements:

(1) The event must be of the kind which ordinarily does not occur in the absence of someone's negligence; (2) it must be caused by an agency or instrumentality within the exclusive control of the defendant; [and] (3) it must not have been due to any voluntary action or contribution on the part of plaintiff.

*Londono v. Washington Metro. Area Trans. Authority,* 766 F.2d 569, 571 (D.C. Cir.1985) (quoting *Bell v. Westinghouse Electric Corp.,* 483 A.2d 324, 329 (D.C. 1984)). *Londono* decided that the *Bell* formulation is equivalent to that stated in prior District of Columbia Court of Appeals cases. *Id.* The earlier formulation requires a plaintiff to establish that " 'the cause of the accident is (1) known, (2) in the defendant's control, and (3) unlikely to do harm unless the person in control is negligent.' " *Id.* (quoting *Washington Sheraton Corp. v. Keeter,* 239 A.2d 620, 622 (D.C.1968)). This formulation makes clear that "the cause of the accident must be known before we can determine that the causal instrument was within the exclusive

control of the defendant and that the injury was not due to an act of the plaintiff." *Id.* (citing *Jones v. Safeway Stores, Inc.,* 314 A.2d 459, 461 (D.C.1974)).

■ Appellants were not entitled to a *res ipsa loquitur* instruction because the cause of the accident was in doubt. Mrs. Rassoulpour testified that the cause of her injury was the jerking of the escalator. Appellees' evidence indicated that it did not jerk. If the jury believed Mrs. Rassoulpour, then there was direct proof of negligence and no inference was necessary. A *res ipsa loquitur* instruction would have told the jury that they could infer negligence from the mere fact that Mrs. Rassoulpour fell on the escalator. That is not the law. *See Levy v. D.C. Transit System, Inc.,* 174 A.2d 731, 733 (D.C.1961).

### B. Freeny Report

The statement in the Freeny report that Mrs. Rassoulpour was running down the escalator is hearsay under Federal Rule of Evidence 801(c) because it is an out-of-court statement admitted for the truth of the matter stated therein. Hearsay is inadmissible unless it falls within one of the exceptions to the hearsay rule. Fed.R.Evid. 802.

■ The Freeny report does not fit the exception for records of regularly conducted business activity (Fed.R.Evid. 803(6)) because at least one level of hearsay within it does not satisfy an exception to the hearsay rule.[2] *See United States v. Baker,* 693 F.2d 183, 188 (D.C.Cir.1982). There is absolutely no evidence that Ebling witnessed the accident. Indeed, the Ebling report implies that Ebling did not witness Mrs. Rassoulpour's fall. Thus the original source of the information was not Ebling. Someone, perhaps Officer Lee, may have told Ebling that Mrs. Rassoulpour was running down the escalator. There is insuffi-

---

1. The version reported by Ebling is somewhat inconsistent with that given by Mrs. Rassoulpour at trial. Ebling reported that Mrs. Rassoulpour stated that she was injured when the escalator stopped. At trial, Mrs. Rassoulpour testified that she was injured when the stationary escalator jerked to a start.

2. We assume *arguendo* that Freeny and Ebling acted in the regular course of business, and we do not decide if the accident report would be a business record in the absence of the unexcused multiple hearsay. *Compare Palmer v. Hoffman,* 318 U.S. 109, 63 S.Ct. 477, 87 L.Ed. 645 (1943); *United States v. Baker,* 693 F.2d 183, 188 n. * (D.C.Cir.1982).

cient evidence to find that the original source satisfies one of the hearsay exceptions, such as the business records exception or the excited utterances exception. Therefore, the statement that Mrs. Rassoulpour was running is inadmissible hearsay. Admitting this statement was not harmless: the statement was appellees' only evidence regarding the cause of the accident.

Appellants also argue that the statement should not have been admitted because it is unreliable. They focus on the fact that at a deposition three years before trial, Freeny testified that he could not remember who reported to him that Mrs. Rassoulpour had been running. Because the statement was inadmissible hearsay, the court need not reach this challenge.

## C. Ebling Report

█ WMATA concedes that if failure to disclose the Ebling report is not harmless, the case should be remanded for a new trial. WMATA argues that the nondisclosure is harmless because the report contains cumulative evidence, i.e., it merely reports Mrs. Rassoulpour's version of the accident. However, the report is very important because it shows that Ebling did not witness the accident and that his report to Freeny may have been based on inadmissible hearsay. The report also discloses the name of a potential eyewitness about whom appellants did not know.

## III. CONCLUSION

The trial court correctly refused to give the jury a res ipsa loquitur instruction. However, the Freeny report was not admissible. WMATA's failure to disclose the Ebling report is not harmless. Accordingly, we AFFIRM in part, REVERSE in part, and REMAND.

So Ordered.