**UNITED STATES FIDELITY & GUARAN-
TY COMPANY, a corporation, Appellant,**

v.

**The DOCTORS' HOSPITAL, Appellee.**

**No. 4992.**

District of Columbia Court of Appeals.

Argued April 7, 1970.

Decided May 28, 1970.

J. Joseph Barse, Washington, D. C., for appellant.

John L. Laskey, Washington, D. C., with whom Dolores Telfer Trojnar, Washington, D. C., was on the brief, for appellee.

Before KELLY, FICKLING and KERN, Associate Judges.

FICKLING, Associate Judge.

A patient underwent an operation at The Doctors' Hospital for the removal of a malignant cystic tumor approximately the size of a full term pregnancy. Subsequent to the operation, a hemostat or clamp was discovered in her abdomen. As a result, a negligence action was brought by the patient against her surgeon, Dr. Gerber, and The Doctors' Hospital. That action was settled with Dr. Gerber and withdrawn as to The Doctors' Hospital, which had refused to participate in the settlement. Thereafter, United States Fidelity & Guaranty Company, Dr. Gerber's insurer, brought this action against The Doctors' Hospital for contribution of one-half of the sum paid by it in settlement of the patient's claim.

At trial it was established that Dr. Gerber was assisted in the operation by Dr. Alizade, a resident physician on the staff of appellee-hospital. Because of the size of the tumor,

the assistant surgeon would not at all times have been able to see what the surgeon was doing, and it was possible, during an operation of this nature, for a hemostat to slip out of sight beneath the organs. It was also established that it was the practice of surgeons to search the operative area for foreign substances before closing the incision and that good medical practice required their removal before closing.

The parties stipulated at trial that a resident, as assistant surgeon, "must use reasonable care to observe and see that *instruments are removed*" from the patient before the incision is closed. They stipulated also that it was not known who placed this particular hemostat in the patient.

The trial court found that the insurer had not proved that the resident had failed to exercise reasonable care in observing the operative site to ensure that all surgical instruments were removed before closing, and judgment was entered for the hospital.

On appeal from denial of the insurer's motion for a new trial, the insurer contends that the trial court erred by requiring proof of something more than the fact that the hospital would have been jointly liable with it in the action filed by the patient against Dr. Gerber and the hospital, had it not been settled. It argues that, "the evidence and the burden of proof must be viewed * * from the patient's standpoint"; that, under those circumstances, the doctrine of res ipsa loquitur is applicable to its case; and that it successfully carried its burden of proof.

In support of its position, the insurer relies on the general language of several opinions to the effect

* * * that when contribution is sought against a defendant [*i. e.*, a second tortfeasor] who was not sued by plaintiff [*i. e.*, the patient], as is permitted by our decisions, the claim sounds in equity and

the court acts as finder of the fact to determine whether the second tortfeasor from whom contribution is sought was negligent, and therefore liable to the [patient].

Jones v. Schramm, U.S.App.D.C. (No. 22,-102, decided March 5, 1970, slip op. at 3) (footnote omitted).

▇▇▇ We do not think that this theory of law, as stated in *Jones,* means that the doctrine of res ipsa loquitur is beneficial to the insurer in the instant case, although the doctrine might have been beneficial to the patient in her action. First, the doctrine of res ipsa loquitur, in this jurisdiction at least,[1] is a device which does not shift the burden of proof to the defendant in an action by the victim of a tort, but merely gives the latter the benefit of an inference of negligence, absent rebuttal, so as to avoid dismissal or a directed verdict in the defendant's favor.

In order to make out a case of malpractice, which is a species of negligence, the plaintiff must show that his injury was a result of the failure to use "that degree of care and skill ordinarily exercised by the profession in his own or similar localities." * * * He can do this by direct evidence about the standard in his locality and the procedure used in his case, in order to demonstrate that it fell short of that standard. * * *

[However a] plaintiff can also make out a case of negligence without direct testimony of a failure to meet the requisite standards of care and skill if the evidence makes out a case under the doctrine of *res ipsa loquitur.* This doctrine "is a common sense rule which allows an inference of negligence where the occurrence complained of ordinarily would *not* happen in the absence of negligence." * * *

Smith v. Reitman, 128 U.S.App.D.C. 352, 353, 389 F.2d 303, 304 (1967) (citations

1. Sweeney v. Erving, 228 U.S. 233, 238, 239, 33 S.Ct. 416, 57 L.Ed. 815 (1913). *See* Prosser, The Procedural Effect of Res Ipsa Loquitur, 20 Minn.L.Rev. 241 (1936).

omitted). The doctrine, which may be used by the patient *against* multiple tort-feasors,[2] permits but does not compel a finding of negligence by the fact finder.[3]

■ Hypothetically, even assuming that Dr. Gerber, as the surgeon in charge, in an action by the patient was held negligent as a matter of *law,* the fact finder could find his assistant not negligent as a matter of *fact.*[4] In the instant case, there was evidence presented by the hospital which explained or negated any inference of negligence by the assistant surgeon, thereby raising a question of fact.

The insurer could derive no benefit from res ipsa loquitur; its case was considered by the fact finder and was disposed of on its merits.[5] The trial court found, in other words, that the appellant had failed to establish as "a prerequisite of contribution that the contribution defendant must have been originally liable to plaintiff [the patient]." [6] That is, the appellant failed to carry its burden of proving that Dr. Alizade was negligent and, consequently, that the hospital (his employer) would have been jointly liable with it in the action by the patient. We are not persuaded that the court's finding was clearly erroneous.

■ Furthermore, as we have previously held,[7] the doctrine is not available *between* alleged joint tort-feasors where, as here, both parties had equal access to the instrumentality which caused the injury.

In light of the foregoing, we find no error and we therefore affirm.

Affirmed.

2. Washington Sheraton Corp. v. Keeter, D.C.App., 239 A.2d 620, 622 (1968).

3. Lathon v. Hadley Memorial Hosp., D.C. App., 250 A.2d 548 (1969).

4. *See* Conrad v. Lakewood Gen. Hosp., 67 Wash.2d 934, 410 P.2d 785 (1966). *See also* Ybarra v. Spangard, 93 Cal.App.2d 43, 208 P.2d 445 (1949).

5. *See* Lathon v. Hadley Memorial Hosp., *supra* n. 3. *See generally* Smith v. Reitman, *supra*.

6. Jones v. Schramm, *supra* (slip op. at 3) (footnote omitted).

7. Washington Sheraton Corp. v. Keeter, *supra* n. 2. *See* Warner v. Pinson, D.C. App., 260 A.2d 689 (1970).