**DISTRICT OF COLUMBIA, Appellant,**

v.

**Thelma ROYAL, et al., Appellees.**

**No. 82–522.**

District of Columbia Court of Appeals.

Argued May 10, 1983.

Decided Aug. 2, 1983.

Richard B. Nettler, Asst. Corp. Counsel, Washington, D.C., with whom Judith W. Rogers, Corp. Counsel, and Charles L. Reischel, Deputy Corp. Counsel, Washington, D.C., were on the brief, for appellant.

Leo A. Roth, Jr., Washington, D.C., for appellees.

Before NEBEKER, BELSON and TERRY, Associate Judges.

NEBEKER, Associate Judge:

On May 13, 1977, a six-year-old child, Sabrina Nicholas, was injured on the grounds of Bancroft Elementary School by a cross-pole which fell off a fence from which the fence fabric had recently been removed. The child's mother, Thelma Royal, sought recovery from both the construction company, Edward M. Crough, Inc. (Crough), and the District of Columbia alleging that the former negligently performed its construction work and the latter negligently failed to supervise school children in the construction area. The two defendants filed cross-claims against each other for contribution, the District additionally cross-claiming for indemnification. On the date set for trial, Crough entered into a settlement agreement with appellees for $280,500. A bench trial did proceed, however, on Crough's cross-claim against the District. The trial court ruled in favor of Crough on its contribution claim, awarding them $140,250. Concurrently, the trial court ruled against the District on its indemnity claim. It is these rulings which are the subject of this appeal. We affirm.

In 1974, the District of Columbia contracted with Crough to construct an addition and make alterations to the Bancroft Elementary School and to remove temporary classrooms from the school grounds. Article 14 of the Construction Contract provided that:

[t]he Contractor [Crough] shall indemnify and save harmless the District and all of its officers, agents and servants against any and all claims or liability arising from or based on, or as a consequence or result of, any act, omission or default of the Contractor, his employees, or his subcontractors, in the performance of, or in connection with, any work required, contemplated or performed under the Contract.

Sometime between mid-April and early May 1977, Crough removed the fence fabric from the vertical and horizontal poles of a metal fence surrounding some temporary classrooms which were being relocated. Once the fence fabric had been taken down, some of the cross-poles fell off the vertical poles upon which they were situated. Other cross-poles were removed by Crough because they were obviously loose. Crough did not, however, test the cross-poles that remained standing.

On the afternoon of May 13, 1977, some children were swinging on the fence poles near where Sabrina Nicholas was waiting to be picked up by her father. Sabrina was subsequently struck by a cross-pole as it fell to the ground. No Bancroft teacher was stationed at the construction site to supervise the dismissal of the children, although teachers · were stationed at other points around the school building. The children had, however, been instructed daily that they were to keep away from the construction area, including the grass strip that separated the street from the fence which surrounded the temporary classrooms.

I

■ Initially, we focus our attention upon the District's indemnity claim. It is the District's contention that the language of the indemnification clause noted above is sufficiently broad so as to indemnify the District against liability based upon its own negligence. We disagree. Though concededly deciding a question under federal law not binding on us, the Supreme Court in *United States v. Seckinger,* 397 U.S. 203, 90 S.Ct. 880, 25 L.Ed.2d 224 (1970), declared that in order to permit an indemnitee to recover for his own negligence, the reviewing court must be "firmly convinced that such an interpretation reflects the intention of the parties." *Id.* at 211, 90 S.Ct. at 885. The Court then construed an indemnifica-

tion clause similar to the one at issue here [1] and concluded that "[w]e can hardly say that this intention is manifested by the formulation incorporated into the present contract. By its terms Seckinger is clearly liable for *its* negligence, but the contractual language cannot readily be stretched to encompass the Government's negligence as well." *Id.* at 212–13, 90 S.Ct. at 885–86. (Emphasis in original.)

The United States District Court for the District of Columbia followed the *Seckinger* rationale in *District of Columbia v. C.F. & B., Inc.,* 442 F.Supp. 251 (D.D.C.1977). There, again, the language of the indemnity provisions paralleled that with which we are presented.[2] The court held that under the contract the District could not "recover for damages resulting either from its own negligence or from acts or omissions in which it was concurrently negligent . . . ." *Id.* at 257. We see no reason why a different result should obtain here. Where the District expects to shift the ultimate responsibility for its negligence to its contractors, such an intention should be plainly evident from the face of the contract.

## II

We turn now to the issue of whether the District was negligent in failing to assign a teacher to supervise the dismissal of Bancroft school children along the north side of the school grounds. At the outset, we recognize that the District of Columbia is not the insurer of the complete safety of school children nor is it strictly liable for any injuries which may occur to them. *Benton v. School Board of Broward County,* 386 So.2d 831, 834 (Fla.App.1980); *Lauricella v. Board of Education,* 52 A.D.2d 710, 381 N.Y.S.2d 566 (1976); Annot., 36 A.L.R.3d 330 (1971). "Teachers and school boards do, however, have an obligation to supervise the activity of students when the school is entrusted with their care." *Benton, supra; McLeod v. Grant County School District No. 128,* 42 Wash.2d 316, 255 P.2d 360 (1953); Annot., 38 A.L.R.3d 843 (1971). The trial court, sitting without a jury, determined that the District was negligent in this case, and we will not disturb this finding unless we find it to be clearly erroneous. *Blanken & Blanken Investments, Inc. v. Keg, Inc.,* 383 A.2d 1076, 1078 n. 4 (D.C.1978).

Viewing the evidence in the light most favorable to appellees, and "giving them the advantage of every fair and reasonable inference that the evidence may justify," *Foster v. Maryland State Savings and Loan Association,* 191 U.S.App.D.C. 226, 228, 590 F.2d 928, 930 (1978), *cert. denied,* 439 U.S. 1071, 99 S.Ct. 842, 59 L.Ed.2d 37 (1979), we find sufficient evidence on this record from which the trial court could reasonably conclude that the District negligently failed to properly supervise the departure of the school children. Sabrina Nicholas testified that no teacher ever supervised the north side of the Bancroft school grounds, the location of the construction site, where she and other stu-

---

1. The relevant indemnification clause in *United States v. Seckinger* declared that:

   "[The Contractor] shall be responsible for all damages to persons or property that occur as a result of his fault or negligence . . . ." *Id.* at 204, 90 S.Ct. at 881.

2. The pertinent portion of the contract in *District of Columbia v. C.F. & B., Inc.* read as follows:

   Article 10. Permits and Responsibility for Work—The contractor shall . . . be responsible for all injuries to persons and damages to property or premises that occur as a result of any act or omission of the contractor in connection with the prosecution of the work . . . .

The bond stated that the principal (indemnitor):

   shall save harmless and indemnify the government from any and all claims, delays, suits, costs, charges, damages, counsel fees, judgment, and decrees to which said government may be subjected at any time . . . on account of any injuries to persons or damage to property or premises that occur as a result of any act or omission of the Principal in connection with the prosecution of the work and shall pay the same, then this obligation to be void, otherwise to remain in full force and virtue.

*District of Columbia v. C.F. & B., Inc., supra,* 442 F.Supp. at 254.

dents awaited transportation home. Sabrina's father estimated that he would see about one hundred children along the street where he met his daughter, twenty to thirty of these in the immediate area of the accident. The school principal, Helen Safret, testified that no school personnel were assigned to supervise near the construction area as the school authorities did not perceive a need to do so since the majority of the school children proceeded south from the school building. Dorothy Robinson, the assistant principal, stated, however, that generally three to four adults (not connected with the school) would be in the area around the construction site during dismissal.

The fact that the school officials reminded the students daily to stay away from the construction site indicates that they were aware of the special dangerous condition that the site posed. In *Ballard v. Polly,* 387 F.Supp. 895, 899 (D.D.C.1975), the United States District Court for the District of Columbia declared that "where such a [special dangerous] condition does exist, and the school has knowledge of its existence, greater supervision is required to insure the safety of the students." This is especially true where, as here, young children are involved, as the fact that they lack a degree of discretion and maturity results in a greater duty owed to them. *Best v. District of Columbia,* 291 U.S. 411, 54 S.Ct. 487, 78 L.Ed. 882 (1933). Under the circumstances presented here, we cannot hold that the trial court's finding of negligent supervision was clearly erroneous. Neither can we hold that the trial court committed clear error when it refused to find a six-year-old child contributorily negligent for placing herself near an admittedly hidden danger.

*Affirmed.*